**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Civ. No. 98-3096 (TFH) |
| THE SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA, et al., | ) ) ) |
| Defendants. | ) ) ) |

## <u>MEMORANDUM OPINION</u>

This action arises out of the 1988 bombing of Pan Am World Airways Flight 103.

Pending before the Court are Defendants' supplemental motion to dismiss, motion for summary

judgment, and motion for a protective order, and Plaintiffs' motion for partial summary

judgment, motion to strike, and motion to reestablish a scheduling order. Upon consideration of

the parties' written submissions, oral arguments, and the entire record, the Court will partially

grant Defendants' dismissal motion, finding Plaintiffs failed to state a claim upon which this

Court can grant relief under federal common law and for punitive damages, and deny

Defendants' summary judgment motion and motion for a protective order. Additionally, the

Court will withhold ruling on Plaintiffs' partial summary judgment motion pending further

briefing on the proper choice of law and the precise laws under which Plaintiffs contend

Defendants are liable for their responsibility in the bombing of Pan Am Flight 103. Finally, the

Court will grant Plaintiffs' motion to strike and deny Plaintiffs' motion to reestablish a

scheduling order.

## BACKGROUND

On December 21, 1988, Pan Am Flight 103 exploded over Lockerbie, Scotland.  The explosion killed all 243 passengers and 16 crew members aboard.  Falling fragments of the 747 killed 11 of Lockerbie's residents.  Investigations revealed that an improvised explosive device lodged in a radio cassette player, which in turn was placed in a stowed suitcase, caused the explosion.

Before discovery of the bombing perpetrators, numerous claimants filed tort actions for wrongful death and personal injury against Pan Am and Alert Management System ("Alert"), the security company responsible for luggage inspection.  The claimants sought recovery based on Pan Am's and Alert's alleged negligence in failing to detect the explosive device.  A jury found Pan Am and Alert liable for compensatory damages for the passengers' deaths; the Second Circuit affirmed the liability verdicts on appeal.  *See In re Air Disaster at Lockerbie, Scotland*, 37 F.3d 804, 830 (2d Cir. 1994), *abrogated in part on other grounds by Zicherman v. Korean Airlines*, 516 U.S. 217 (1996).

The United States and Great Britain accused Libya of carrying out the bombing of Pan Am Flight 103 and, in 1991, indicted two Libyan intelligence officials, Abdel Basset Ali Al Megrahi and Lahem Khalif Fhimah.  By agreement of the United States, Great Britain, and Libya, a special panel comprised of three Lords Commissioners of Scotland's supreme criminal court, the High Court of Justiciary, tried Megrahi and Fhimah at Camp Zeist, Netherlands.  The court unanimously convicted Megrahi of murdering all 270 victims for his role in the bombing and acquitted Fhimah.  *See Her Majesty's Advocate v. Megrahi*, No. 1475/99, 2001 G.W.D. 5-

177, 2001 WL 14966 (H.C.J. at Camp Zeist January 31, 2001) ("*HMA* Op."). Five judges of the High Court affirmed the panel's conviction, rejecting as insufficient Megrahi's grounds of appeal. *See Megrahi v. Her Majesty's Advocate*, No. C104/01, 2002 J.C. 99, 2002 WL 14446257 (H.C.J. Appeal March 14, 2002).

Plaintiffs in this matter are the numerous insurers of Pan Am and Alert that paid for the defense and settlement of the personal injury and wrongful death claims (collectively "Hartford"). Defendants are the Socialist People's Libyan Arab Jamahiria, Jamahiriya Security Organization ("JSO"), and Libyan Arab Airlines ("LAA") (unless otherwise noted, collectively "Libya"). As subrogees of Pan Am and Alert, Hartford seeks to recover indemnity, restitution, unjust enrichment, and contribution from Libya for the approximately $500 million Hartford spent to defend and settle the claims against Pan Am and Alert.

On December 18, 1998, Hartford filed its initial complaint, alleging a federal common law claim established by the Foreign Sovereign Immunities Act. Hartford amended its complaint approximately six months later, adding another plaintiff. On April 14, 1999, Libya moved to dismiss for lack of personal and subject matter jurisdiction and for failure to state a claim. This Court denied Libya's dismissal motion. Mem. Op. Sept. 23, 1999 (Dkt. #16) ("*Hartford I*"). Both parties subsequently filed summary judgment motions, and Hartford moved for leave to file a second amended complaint. On March 20, 2006, this Court granted Hartford leave to again amend its complaint. Mem. Op. March 20, 2006, at 1 (Dkt. #70) ("*Hartford II*"). In doing so, the Court reserved decision on the pending motions for summary judgment and granted Libya leave to file a motion to dismiss the second amended complaint or to otherwise supplement its arguments for dismissal. *Id*.

3

# ANALYSIS

## I.    LIBYA'S SUPPLEMENT TO ITS MOTION TO DISMISS

Libya contends the Court must dismiss this case because, (1) in light of President George W. Bush's executive determination certifying the rescission of Libya's designation as a state sponsor of terrorism,[1] this Court lacks subject matter jurisdiction to hear this case, and (2) Hartford's second amended complaint fails to state a cause of action on which this Court can grant relief (a) under state statutory and common law, (b) under federal common law, and (c) for punitive damages.  For the reasons stated below, this Court will grant Libya's motion in part and deny it in part.

### A.    Legal Standards

A complaint need only include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[D]etailed factual allegations" are unnecessary; rather, the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, ___, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks and citation omitted; ellipsis in original).  In reviewing a motion to dismiss, a court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged."

---

[1] Although Libya asserts this Court lost subject matter jurisdiction "due to rescission of Libya's designation as a State Sponsor of Terrorism on May 12, 2006," President Bush's May 12, 2006, executive determination did not rescind Libya's determination.  Rather, it certified the rescission.  The State Department, through Secretary of State Condoleezza Rice, rescinded Libya's designation on July 13, 2006.  Rescission of Determination Regarding Libya, 71 Fed. Reg. 39696-02.

*Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations and quotation marks omitted).  Indeed, "the issue presented by a motion to dismiss is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Rochon v. Gonzales*, 438 F.3d 1211, 1216 (D.C. Cir. 2006) (citation omitted).

### B.     Subject Matter Jurisdiction

The Foreign Sovereign Immunity Act ("FSIA") provides the exclusive basis for this Court's jurisdiction over a foreign state. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989).  The FSIA confers jurisdiction on district courts when a foreign state is not entitled to immunity. *Id.*; 28 U.S.C. § 1330(a).  Foreign states are immune from suit in the United States unless the action comes within an exception specifically enumerated in the FSIA. *See* 28 U.S.C. § 1604.  The exception to foreign sovereign immunity Hartford invokes here is the state sponsored terrorism exception, *see* 28 U.S.C. § 1605(a)(7), enacted as part of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, § 221(a), 110 Stat. 1214 (Apr. 24, 1996).  In relevant part, it provides:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources . . . if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency . . . .

28 U.S.C. § 1605(a)(7).  The exception applies only if (1) the foreign state was a designated state sponsor of terrorism when the act occurred; (2) the plaintiff afforded the foreign state a reasonable opportunity to arbitrate the dispute if the act occurred within the foreign state's territory; and (3) either the claimant or the victim was a United States national when the act

occurred.  *See id.*

In denying Libya's previous motion to dismiss under Rule 12(b)(1), Fed. R. Civ. P., this Court held that 28 U.S.C. § 1605(a)(7) lifted Libya's sovereign immunity and, thus, allowed this Court to exercise subject matter jurisdiction over Hartford's claims.  *Hartford I*, 5-7.  The Court reaffirmed this holding in its memorandum opinion of March 20, 2006.  *Hartford II*, 7 ("The Court reaffirms its prior holding that it has subject matter jurisdiction in this case.").  Regardless, Libya still maintains this Court lacks subject matter jurisdiction.  *See* Defs.' Suppl. Mot. Dismiss 3-5; Defs.' Reply to Pls.' Opp'n to Defs.' Suppl. Mot. Dismiss 1.  Libya now, however, alters its argument.  In its earlier motion to dismiss and cross-motion for summary judgment, Libya argued this Court lacked subject matter jurisdiction because Hartford's claims for indemnity and contribution were beyond the scope of § 1605(a)(7).  This Court disagreed, holding that § 1605(a)(7) encompasses such third-party claims.  *Hartford I*, 4-7.  Libya now argues this Court lacks subject matter jurisdiction because the President certified the rescission of its designation as a state sponsor of terrorism on May 12, 2006, *see* Ex. A, Defs.' Suppl. Mot. Dismiss, and, by doing so, stripped this Court of subject matter jurisdiction under §1605(a)(7).  Defs.' Suppl. Mot. Dismiss 3-5 ("The Court has now [lost] any and all subject-matter jurisdiction due to the rescission of Libya's designation as a State Sponsor of Terrorism on May 12, 2006.").  Countering, Hartford contends that, regardless of a later rescission, a foreign state is amenable to suit if, at the time the acts giving rise to the claim occurred, it was a designated state sponsor of terrorism.  Pls.' Opp'n to Defs.' Suppl. Mot. Dismiss 5.  Hartford is correct.

FSIA's plain language forecloses Libya's claim that the rescission revoked this Court's subject matter jurisdiction.  Section 1605(a)(7), in relevant part, provides:

A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, [or] aircraft sabotage, . . . *except that the court shall decline to hear a claim under this paragraph*—

> *(A) if the foreign state was not designated as a state sponsor of terrorism . . . at the time the act occurred . . . .*

28 U.S.C. § 1605(a)(7) (emphasis added).  Thus, as the D.C. Circuit noted, "the FSIA specifically provides that when a country, once designated as a state sponsor of terrorism, is subsequently restored to good standing, that country is still amenable to suit for acts that took place prior to the restoration of its sovereign immunity."  *Acree v. Republic of Iraq*, 370 F.3d 41, 56 (D.C. Cir. 2004) (dictum); *see also Kilburn v. Islamic Republic of Iran*, 441 F. Supp. 2d 74, 76 (D.D.C. 2006) ("Because [Libya] was a state sponsor of terrorism at the time the alleged acts occurred, the court has jurisdiction pursuant to the FSIA . . . ."), *summarily aff'd*, No. 06-7127 (D.C. Cir. Oct. 19, 2006).

Responding to §1605(a)(7)'s language and the circuit's non-binding interpretation in *Acree*, Libya does not dispute it was a designated state sponsor of terrorism at the time of the bombing.  Rather, it contends the language is inapplicable: "The Court in *Acree* speaks to acts 'that took place prior to restoration of . . . sovereign immunity.'  Libya, at the time of the act in question [1988], enjoyed full sovereign immunity as the terrorism amendment was not added to the FSIA until 1996."  Defs.' Reply to Pls.' Opp'n to Defs.' Suppl. Mot. Dismiss 3.

Again, Libya's argument is misplaced; while §1605(a)(7) was enacted in 1996, it applies retroactively.  *See Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 13 (D.D.C. 1998) ("'The amendments made by this subtitle shall apply to any cause of action arising before, on or after the date of enactment of this Act [April 24, 1996].'" (quoting section 221(c) of Public Law 104-32

(alteration in original)), *abrogated on other grounds as recognized in Haim v. Islamic Republic of Iran*, 425 F. Supp. 2d 56, 71 n.2 (D.D.C. 2006).  Thus, although Libya "enjoyed" sovereign immunity for terrorist acts in 1988, it lost immunity for those same acts in 1996.  Rescission, then, of its state sponsor of terrorism designation would restore its sovereign immunity for acts that occur thereafter but leave it amendable to suit for acts that occurred prior to the rescission. *See Acree*, 370 F.3d at 56.

Moreover, the Presidential Determination on which Libya relies in asserting this Court no longer has jurisdiction further belies Libya's position.  Indeed, the Determination acknowledges the continuing existence of terrorism cases against Libya:

> [B]ecause of remaining court cases against Libya, the United States secured a confirmation from Libya of its policy and practice of carrying out agreed settlements and responding in good faith to legal cases brought against it, including court judgments and arbitral awards.  Libya also acknowledged that assets it owns and is introducing into the United States . . . would be at risk if it does not implement any resulting court judgments.  The Administration has subsequently facilitated discussions between representatives of American claimants and Libya as they explore the possibility of out-of-court settlements.

Ex. A at 4, Defs.' Suppl. Mot. Dismiss.  If the rescission somehow stripped courts of jurisdiction to hear cases arising from Libya's past actions, there would be no need for the administration to secure confirmations from Libya that it would respond to such suits in good faith.  Nor would the administration look to facilitate discussions to resolve claims out of court; if courts lack jurisdiction over claims, there would be no court out of which to settle.

In sum, regardless of the State Department's rescission of Libya's designation as a state sponsor of terrorism, this Court has subject matter jurisdiction over Hartford's claims and,

accordingly, will again deny Libya's motion to dismiss for lack of subject matter jurisdiction.[2]

### C.    Sufficiency of Claims

In *Hartford II*, this Court concluded that, because Hartford's first amended complaint formally alleged causes of action under only federal common law, it failed to state a claim on which this Court could grant relief.  Following the circuit's approach and that of other judges in this district, the Court allowed Hartford to again amend.  Libya contends Hartford's second amended complaint still fails to state a claim.

### 1.    State Statutory and Common Law

Although Hartford's second amended complaint asserts claims for indemnity, restitution, and contribution under "state law" and this Court previously held that such claims were sufficient to survive a 12(b)(6) motion, Libya contends the second amended complaint fails to state a claim because it does not assert "specific state-law causes of action."  Defs.' Reply to Pls.' Opp'n to Defs.' Suppl. Mot. Dismiss 4.  Also, although Hartford asserts in its briefing that New York law should govern this case, *see* Pls.' Summ. J. Mot. 12-16; Pls.' Opp'n to Defs.' Suppl. Mot. Dismiss 8, Libya argues that circuit and district courts have "repeatedly rejected" Hartford's contention that it need not include a choice of law analysis in its complaint but may do so in its submissions.  Defs.' Reply to Pls.' Opp'n to Defs.' Suppl. Mot. Dismiss 4; Defs.' Suppl. Mot.

---

[2] Additionally, the Court will not acquiesce in Libya's request that it "certify that [sic] the issue of the Court's previous denial of Libya's sovereign immunity in its 1999 Memorandum Opinion, " Defs.' Suppl. Mot. Dismiss 2.  As Hartford correctly posits, Libya could have appealed that denial under the collateral order doctrine but failed to do so.  *See* Pls.' Opp'n to Defs.' Suppl. Mot. Dismiss 18.  Moreover, this Court does not view the issue as one "to which there is a substantial ground for difference of opinion," 28 U.S.C. §1292 (identifying grounds for certifying an otherwise unappealable order as one from which a party may apply for interlocutory review).

Dismiss 11-12 (noting this Court's recognition of Hartford's argument that New York law should apply here and arguing "Hartford's second amended complaint, however, does not reference, assert, or even allude to the law of New York (or any state) in asserting its causes of action"). This is not so.

Rather than providing any analysis of its own to support its proposition, Libya quotes at length from Judge Kennedy's opinion in *Pugh v. Socialist People's Libyan Arab Jamahiriya*, No. 02-2026, 2006 WL 2384915 (D.D.C. May 11, 2006). Defs.' Reply to Pls.' Opp'n to Defs.' Suppl. Mot. Dismiss 5-6.[3]  In *Pugh*, the plaintiffs sought partial summary judgment on Libya's liability for the 1989 bombing of UTA Flight 772 over Niger, Africa.  Judge Kennedy denied the plaintiffs' motion, holding that *Cicippio-Puleo* and *Acree* required plaintiffs' complaint to allege more than just "generic common law torts."  2006 WL 2384915, at *15.  In doing so, Libya argues, Judge Kennedy indicated that plaintiffs in FSIA cases are required to identify, in their complaint, their state law claims with particularity, including specification of the particular states out of which their claims arise.  *Id.*  To support its argument, Libya points to Judge Kennedy's rejection of Judge Urbina's holding in *Simpson v. Socialist People's Libyan Arab Jamahiriya*, 362 F. Supp. 2d 168 (D.D.C. 2005): "Disregarding the language in the D.C. Circuit opinions, Judge Urbina recently . . . held that there is no heightened pleading requirement in FSIA cases.

---

[3]  Libya feigns analysis in its opening memorandum supporting its dismissal motion; however, its "analysis" is a verbatim recitation of Judge Kennedy's analysis in *Pugh* absent citation to Judge Kennedy's opinion.  *See* Defs.' Suppl. Mot. Dismiss 12.  As Judge Urbina observed in an identical situation involving Libya's counsel, "[w]ithout implying that this omission was the product of anything more than sloppy lawyering, the court impresses upon defense counsel its intolerance for plagiarism.  The court expects counsel to fully comply with this court's rules and submit work product befitting of pleadings in a federal court."  *Kilburn v. Republic of Iran*, 441 F. Supp. 2d 74, 77 n.2 (D.D.C. 2006).

This court believes that the D.C. Circuit's language in *Cicippio-Puleo* and *Acree* forecloses such a conclusion." *Id*. at *15, n.20 (internal citations omitted).[4]

Libya's reading of *Pugh*, however, contradicts this Court's earlier holding that "*Acree* does not increase what is required of Plaintiffs by notice pleading, nor does it raise the bar for surviving a motion to dismiss for failure to state a claim." *Hartford II*, 9 (citing *Simpson*, 362 F. Supp. 2d at183 n.13).[5]  Based on its interpretation of *Acree*, this Court held that Hartford's second amended complaint, although it does not identify the precise state's or states' laws on which its claims rely, was sufficient to survive a dismissal motion for failure to state a claim. *Hartford II*, 9-10 ("It cannot be said at this stage in the litigation that it appears beyond doubt that Hartford is not entitled to relief.").  *See also Dammarell v. Islamic Republic of Iran*, 370 F. Supp. 2d 218, 219-20 (D.D.C. 2005) (clarifying on reconsideration that although court directed plaintiffs, in line with *Acree*, to "amend their Complaint to identify particular causes of action arising out of specific sources of law, . . . this does not require plaintiffs to identify in the Complaint the particular state that provides each state law cause of action"); *Simpson*, 362 F. Supp. 2d at 183 ("Generic tort law . . . is sufficient to survive a motion to dismiss . . . .").  And no binding, intervening law questions this holding.

---

[4] Notably, approximately nine months after Judge Kennedy decided *Pugh*, in *Hurst v. Socialist People's Libyan Arab Jamahiriya*, he specified his reading of *Cicippio-Puleo* and *Acree*, holding that "Libya's argument"—the same it offers here—"misconstrues this Circuit's pleading requirements under the FSIA: plaintiffs need not set forth their *choice of law* contentions in their complaint . . . [or] specify in the complaint a particular state out of which each claim arises."  474 F. Supp. 2d 19, 27 (D.D.C. 2007) (citations omitted).

[5] *Acree* itself supports this Court's previous conclusion that pleading requirements are the same in FSIA cases as in all others.  *See* 370 F.3d at 59 ("[A]s in *any case*, a plaintiff proceeding under the FSIA must identify a particular cause of action arising out of a specific source of law." (emphasis added)).

Therefore, this Court will, in line with its previous determination, deny Libya's 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted as to Hartford's claims under state law.

### 3.    Federal Common Law

Although this Court previously held that Hartford could not state a cause of action under federal common law, *Hartford II*, 8 ("The First Amended Complaint only formally alleges causes of action based on federal common law.  Due to the change in controlling case law, the Court must conclude that Plaintiffs' First Amended Complaint would fail to state a claim . . . ."), Hartford continues to assert that "it makes good sense to apply a federal rule of decision to actions against terrorist foreign states."  Pls.' Opp'n to Defs.' Suppl. Mot. Dismiss 11.  While applying federal common law under a jurisdictional statute may make good sense, no intervening case law casts doubt on this Court's previous holding.  Rather, since *Acree*, the judges in this district have uniformly held that federal common law does not provide a cause of action under §1605(a)(7).  *See, e.g.*, *Pugh*, 2006 WL 2384915, at *14 ("[T]he court denies plaintiffs' request to fashion a cause of action against defendants under federal common law and grants summary judgment in favor of defendants in that regard."); *Wyatt v. Syrian Arab Republic*, 398 F. Supp. 2d 131, 137 n.3 (D.D.C. 2005); *Collett*, 362 F. Supp. 2d at 238 n.5 ("[F]ederal common law and generic formulations of common law cannot furnish a cause of action.").  And this Court sees no reason to hold otherwise.

Accordingly, the Court will grant Libya's motion to dismiss as to Hartford's claims for indemnity and contribution under federal common law (Counts IV and V).

####     4.        Punitive damages

Hartford's second amended complaint seeks punitive damages under both state and federal law against JSO and LAA.  Second Am. Compl. ¶¶ 41-47.  Libya asserts both entities are immune to claims for punitive damages.  While Libya's immunity argument is not wholly accurate, because of the nature of this suit, Hartford fails to state a claim for punitive damages.

Under the FSIA, a foreign state stripped of sovereign immunity pursuant to §1605(a)(7) is "liable in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C.§ 1606.  However, "a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages."  *Id*.  An "agency or instrumentality" for purposes of § 1606 is any entity "which is a separate legal person, corporate or otherwise, and . . . is an organ of a foreign state or political subdivision thereof, or the majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof."  28 U.S.C. § 1603(b).  Discerning whether an entity is an "agency or instrumentality" requires applying the following categorical test: "if the core functions of the entity are governmental, it is considered the foreign state itself; if commercial, the entity is an agency or instrumentality of the foreign state."  *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003) (citing *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 153 (D.C. Cir. 1994)).  *See, e.g.*, *id*. at 234-35 (holding that, for purposes of FSIA, Iran's Ministry of Foreign Affairs must be considered Iran itself, as the conduct of foreign affairs "is an important and indispensable governmental function" (citation and internal quotation marks omitted)); *Transaero*, 30 F.3d at 153 (concluding that Bolivia's air force and "armed forces . . . in all cases" must be considered as the foreign state itself).

13

Libya admitted LAA is an "agency or instrumentality" of the Libyan government, as the term is defined under 28 U.S.C. § 1603(b).  SOMF ¶ 4.  Thus, § 1606 does not shield LAA from a claim for punitive damages.  *See* 28 U.S.C. § 1606.  JSO, on the other hand, appears immune from such claims, as it is apparently charged with Libyan security functions, *see* Ex. 1, Defs.' Reply to Pls.' Opp'n to Defs.' Suppl. Mot. Dismiss.  *See Roeder*, 333 F.3d at 234-35; *Hurst*, 2007 WL 274321, at *5 (finding that, like Iran's Ministry of Information and Security, "JSO performs core governmental functions for [] Libya concerning its security and intelligence and thus shares Libya's immunity from punitive damages"); *contra Collet v. Socialist Peoples' Libyan Arab Jamahiriya*, 362 F. Supp. 2d 230 (D.D.C. 2005) (allowing punitive damage claim against JSO to proceed).

Because this Court's subject matter jurisdiction is premised on Hartford stepping into the shoes of the victims of the Flight 103 bombing, however, Hartford cannot assert its present claims for punitive damages against LAA or JSO.  Hartford's complaint states that its claims are based on it being "subrogated to any claims or rights against [Libya] possessed by Pan Am or Alert to recover all or part of the monies expended . . . in defending [victims'] claims for money damages for personal injury and death."  Second Am. Compl. ¶ 24.  And this Court held that its subject matter jurisdiction was premised on just that, i.e., Pan Am and, in turn, Hartford, stepping into the victims' shoes.  *Hartford I*, 5-6.  Hartford now, however, asserts its complaint states a claim for punitive damages based on its "own injuries separate from those incurred by [its] insureds."  Pls.' Opp'n to Defs.' Suppl. Mot. Dismiss 15-16.  A claim based on Hartford's own alleged injuries is outside the scope of this Court's jurisdiction under the FSIA.

Accordingly, this Court will grant Libya's motion to dismiss for failure to state a claim as

to Hartford's punitive damages claims (Counts VI and VII).

## II.   SUMMARY JUDGMENT MOTIONS

Hartford seeks partial summary judgment as to Libya's liability for the bombing of Pan

Am Flight 103 based on the undisputed facts, including the Scottish court's conviction of a

Libyan official, Megrahi, for murdering those killed in the Pan Am Flight 103 bombing and

Libya's ambassador's statement to the United Nations that Libya accepts responsibility for its

officials' actions in relation to the bombing.  Pls.' Mot. Summ. J. 8-10.  Countering, Libya

merely contends the Scottish court's conviction and underlying findings are not admissible.

Defs.' Opp'n to Pls.' Mot. Summ. J. 15-16.

In its cross motion for summary judgment, Libya argues this Court should grant judgment

in its favor because (1) this Court lacks subject matter jurisdiction, (2) exercising personal

jurisdiction over Libya violates the Fifth Amendment's Due Process Clause, and (3) Hartford

does not have a viable cause of action against Libya.  Defs.' Mot. Summ. J. 2-14.

For the reasons stated below, this Court will withhold ruling on Hartford's summary

judgment motion pending further briefing and will deny Libya's cross motion.

### A.   Legal Standards

Summary judgment is proper if the pleadings, depositions, answers to interrogatories,

admissions on file and affidavits, if any, show no genuine issue of material fact exists and the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  While the moving

party "bears the initial responsibility" of demonstrating the absence of a genuine issue of material

fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), in opposing a properly supported

summary judgment motion, "an adverse party may not rest upon the mere allegations or denials

of the adverse party's pleading," Fed. R. Civ. P. 56(e).  Rather, the nonmovant's burden is to "set

forth specific facts showing that there is a genuine issue for trial." *Id*.  If the nonmovant fails to

point to "affirmative evidence" showing a genuine issue for trial, *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 257 (1986), "summary judgment, if appropriate, shall be entered against the

adverse party."  Fed. R. Civ. P. 56(e).  A nonmovant meets its burden "only 'if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party.'" *Laningham v. U.S.

Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (quoting *Anderson*, 477 U.S. at 248).

### B.      Hartford's Motion for Partial Summary Judgment

#### 1.      Genuine Issues of Material Fact

Hartford's argument is straightforward.  The Scottish court convicted Megrahi of murder

for his role in the Pan Am 103 bombing.  It found that Megrahi held high posts in JSO, including

head of airline security.  Libya admitted he was also an officer, agent, or employee of LAA.  And

Libya's ambassador stated that Libya accepts responsibility for its officials' actions in the Pan

Am 103 bombing.  "In short," Hartford argues, "Libya has accepted that its official, employee, or

agent was responsible for the bombing of Pan Am Flight 103" and "formally admitted" that, in

doing so, "Megrahi acted in the scope of his employment or agency."  Pls.' Mot. Summ. J. 10.

Hartford asserts it is, therefore, "entitled to partial summary judgment on Libya's liability for this

act of 'aircraft sabotage.'" *Id*.

In opposition, rather than disputing any of the facts on which Hartford relies in reaching

its conclusion or submitting any contrary evidence, or even, for that matter, disputing its liability

for the bombing, Libya simply asserts this Court should deny Hartford's motion because it is

based on the "fatally flawed premise and assumption that a foreign conviction will be simply

16

accepted as admissible before this Court." Defs.' Opp'n to Pls.' Summ. J. Mot. 15.[6]  Libya

contends no authority allows this Court to recognize a foreign criminal judgment and its

underlying findings.  *Id.*; Defs.' Reply to Pls.' Opp'n to Defs.' Mot. Summ. J.10 ("Libya has not

denied that Megrahi was convicted by a Scottish criminal court but asserts that for the purposes

of a summary judgment motion Hartford may <u>not</u> attempt to admit the underlying findings of fact

from a foreign court judgment before a United States Court and <u>must</u> establish such facts before

the Court here.").  Libya is mistaken.

Indeed, "principles of comity suggest that [a foreign] judgment should be given weight as

*prima facie* evidence of the facts underlying it," and the challenging party has the burden of

impeaching the reliability of such judgment.  *Donnelly v. FAA*, 411 F.3d 267, 270–71 (D.C. Cir.

2005); *see also United States v. Garland*, 991 F.2d 328, 335 (6th Cir. 1993) (holding that "a

foreign judgment that shows no sign of being unreliable should be admitted"); *Lloyd v. American

Export Lines, Inc.*, 580 F.2d 1179, 1190 (3d Cir. 1978) (holding that district court erred in

refusing to accept a foreign judgment of conviction under Rule 803(22), Fed. R. Evid.); *Pugh*,

2006 WL 2384915, at *3-4 (rejecting Libya's argument that, because it was not a party to the

proceeding and the criminal law standards are not the same as those in the United States, a

French court's conclusion that Libya was responsible for the UTA Flight 772 bombing over

---

[6]  Additionally, Libya failed to comply with Local Civil Rule 56.1 by not accompanying
its opposition to Hartford's motion with a "separate and concise statement of genuine issues
setting forth all material facts as to which it is contended there exists a genuine issue necessary to
be litigated."  LCvR 56.1.  Therefore, this Court will treat as true the facts in Hartford's
statement of material facts as to which there is no genuine dispute.  *See id.* ("In determining a
motion for summary judgment, the court may assume that the facts identified by the moving
party in its statement of material facts are admitted, unless such a fact is controverted in the
statement of genuine issues filed in opposition to the motion."); *Jackson v. Finnegan,
Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996).

Niger was inadmissible for purposes of partial summary judgment as to liability, stating "[t]hese unsupported arguments are insufficient to preclude the court from considering the French proceeding for its evidentiary value"[7]).   In *Donnelly*, after Japanese customs officials found Ecstasy on Donnelly's person when he deplaned a non-stop flight from the United States, a Japanese court convicted Donnelly, a FedEx pilot, of attempting to import a controlled substance. *Id*. at 269.   Relying on, among other things, the Japanese court's findings, the FAA revoked Donnelly's airman certification pursuant to 49 U.S.C. § 44710(b)(2), which provides for revocation if, along with other requirements not relevant here, an airman knowingly carries out an activity punishable under a United States law related to a controlled substance.  *Id*. at 269-70. Summoning the same principles that support enforcing foreign judgments, the court held that the FAA did not error in collaterally using a foreign criminal proceeding as evidence that Donnelly engaged in an activity that violates such a law.  *Id.* at 271.

In a case analogous to the present, Judge Kennedy, applying *Donnely*'s principles, relied on the Scottish court's conviction of Megarhi in granting relatives of four Pan Am Flight 103 victims partial summary judgment as to Megrahi's responsibility for the victims' deaths.  *Hurst v. Socialist People's Libyan Arab Jamahiriya*, 474 F. Supp. 2d 19, 34-36 (D.D.C. 2007).  Judge Kennedy not only recognized the Scottish court's conviction but also afforded preclusive effect to the "facts surrounding []Megrahi's responsibility for the deaths of the 270 victims,"

---

[7] Although Judge Kennedy considered the French proceeding for its evidentiary value in finding the plaintiffs established Libya's culpability in the bombing, he denied the plaintiffs' motion for partial summary judgment as to Libya's liability, finding that, based on the circuit's holding in *Acree* that traditional torts in their generic form are insufficient to impose liability under the FSIA, the plaintiffs failed to identify a particular cause of action arising under a specific source of law.  *Pugh*, 2006 WL 2384915, at *14-15.  Judge Kennedy concluded the plaintiffs must amend their complaint if they chose to proceed.  *Id*. at *15.

disallowing Megrahi from relitigating those facts. *Id*. at 36. Judge Kennedy did so after holding that the Scottish court's judgment met the standards for recognition and preclusion, in that it followed a full and fair trial conducted under a judicial system that does not violate United States public policy. *Id*. at 34. Judge Kennedy based his holding on the following: Megrahi's trial lasted 84 days; the prosecution called 231 witnesses, 132 of whom Megrahi's and Fhimah's counsel cross-examined; while the panel acknowledged the one eyewitness' account was not absolute, it found that "nothing in the evidence" left it with "any reasonable doubt" as to Megrahi's guilt; and the five judges who heard his appeal found that none of the grounds Megrahi asserted were well founded and, thus, rejected the appeal. *Id*. at 34.

This Court agrees with Judge Kennedy's reasoning in *Hurst* and, accordingly, finds the Scottish court's judgment sufficiently reliable to establish Megrahi's responsibility for the bombing of Pan Am Flight 103 and to provide prima facie evidence of the facts underlying it. Indeed, Libya, beyond stating that this Court has no authority to consider the Scottish court's judgment in ruling on Hartford's motion, failed to provide anything to impeach or otherwise contradict the judgment or its underlying factual findings. Therefore, the Court will look to the Scottish court's judgment and essential findings in assessing whether Libya is liable for the Pan Am bombing. *See Donnelly*, 411 F.3d at 270-71 (holding that "principles of comity suggest that [a foreign] judgment should be given weight as *prima facie* evidence of the facts underlying it" and that the burden is on the party challenging use of the foreign judgment to impeach its reliability); *Black's Law Dictionary* 598 (8th ed. 2004) (defining prima facie evidence as "[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced").

Having rejected Libya's only argument supporting its contention that factual issues remain, the evidence and Hartford's arguments stand undisputed and establish Libya's responsibility for the bombing of Pan Am Flight 103.  Following the December 21, 1988, destruction of Flight 103, the United States and Scotland indicted Megrahi and Fhimah with crimes arising out of the bombing.  SOMF ¶ 8.  At the time of the bombing, Megrahi was an official of the Libyan government, occupying fairly high posts in JSO—an integral part of the Libyan government—and a post in LAA, which is an agency or instrumentality of the Libyan government.  *HMA* Op. ¶ 88 (finding Megrahi was a "member of the JSO, occupying posts of fairly high rank [and that] . . . [o]ne of these posts was head of airline security"); SOMF ¶¶ 3, 4, 10 (stating JSO is integral part of its government, LAA is an agency or instrumentality of Libya, and Megrahi was an agent, employee, or officer of LAA).  Following an 84 day trial, the Scottish court, finding no reasonable doubt as to his guilt, unanimously convicted Megrahi of murdering the 270 victims of the Pan Am disaster for his role in the bombing.  *HMA* Op. ¶ 89 ("There is nothing in the evidence which leaves us with any reasonable doubt as to the guilt of the first accused [Megrahi] of the remaining charge in the Indictment as amended.").  In convicting Megrahi, the court found the explosion's cause was an improvised explosive device lodged in a radio cassette player.  *Id*. ¶ 15.  Acting as the device's trigger was an MST-13 timer of single solder mask variety, a substantial quantity of which were specifically designed for, and provided to, Libya prior to the bombing.  *Id*. ¶¶ 49-50, 82.  The court also concluded that, during the relevant time period, Megrahi traveled to Malta, where the bomb was loaded onto the Pan Am flight, using a false passport issued to him by the Libyan passport authority at JSO's request.  *Id*. ¶ 87.  Overall, the court concluded, the "conception, planning and execution of the plot which led

to the planting of the explosive device was of Libyan origin" and evidence relating to other

terrorist organizations' possible involvement did "not create a reasonable doubt in [the judges']

minds about the Libyan origin of this crime." *Id*. ¶ 82. And, after Megrahi's conviction and the

rejection of his appeal, the chargé d'affaires a.i. of the Permanent Mission of Libya to the United

Nations issued a statement to the United Nations Security Council, declaring that Libya, as a

sovereign state, "facilitated the bringing to justice of the two suspects charged with the bombing

of Pan Am 103 and accepts responsibility for the actions of its officials." SOMF ¶ 11; Ex. E at 1,

SOMF.

 Based on this evidence, the Court concludes Hartford established that no factual issue

exists for trial as to Libya's responsibility for the bombing of Pan Am Flight 103. And, because

Libya failed to produce contradictory evidence, or otherwise even argue it is not responsible, *see*

*Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002)

("If a party fails to counter an argument that the opposing party makes in a motion, the court may

treat that argument as conceded."), the Court finds that no "reasonable jury could return a

verdict" for Libya on the issue, *Laningham*, 813 F.2d at 1241. As explained below, however, the

Court cannot, at this time, grant Hartford's motion in whole because Hartford has not established

its entitlement to judgment as a matter of law on any of its claims.

## 2. Entitlement to Judgment as a Matter of Law

 Although Hartford established that no genuine issue of fact exists regarding Libya's

responsibility for the bombing of Pan Am Flight 103, it has not stated a cause of action sufficient

to entitle it to judgment as a matter of law. Indeed, Hartford's second amended complaint does

not identify causes of action under specific state or federal statutes or the common law of a

specific state; rather, it states generic claims for indemnity, restitution, and contribution under

"state common law and/or state statutory law," "state law of equity, unjust enrichment, and

restitution," and "state common law or statutory law of contribution," respectively, Second Am.

Compl. ¶¶ 29, 34, 36, and claims for indemnity and contribution under "federal law." *Id*. ¶¶ 38,

40. Hartford does, however, assert in its motion that it has at least one viable claim under a

specific state law: a claim for indemnity under New York law. Pls.' Summ. J. Mot. 10-11. But

in doing so, Hartford claims its demonstration that this cause of action exists is "illustrative of

applicable causes of action, not exhaustive." *Id*. at 11 n.13. Thus, Hartford essentially asks this

Court to find Libya liable for torts under generic "state law" without analyzing which specific

law or laws subject Libya to liability for its role in the bombing. This is an invitation the Court

will not accept. *See Simpson*, 362 F. Supp. 2d at 183 ("Generic tort law, the reference of which

is sufficient to survive a motion to dismiss, is not a viable cause of action.").

Accordingly, the Court will order Hartford to submit briefing on the proper choice of law

determination and specific causes of action for each of the plaintiffs. Libya will then have the

opportunity to respond.

### C. Libya's Cross-Motion for Summary Judgment

Libya contends it is entitled to summary judgment because subject matter jurisdiction is

lacking, this Court's exercise of personal jurisdiction violates due process, and Hartford has no

viable cause of action. Libya's contentions are without merit. Therefore, the Court will deny

Libya's motion in toto.

### 1. Subject Matter Jurisdiction

As analyzed above, 28 U.S.C. § 1330(a) confers on this Court subject matter jurisdiction

over Hartford's claims, as 28 U.S.C. §1605(a)(7) strips Libya of its sovereign immunity to such claims regardless of the State Department's rescission of Libya's designation as a state sponsor of terrorism.

### 2.    Personal Jurisdiction

Notwithstanding this Court's contrary ruling in 1999, *see Hartford I*, 6-8, Libya argues that this Court's exercise of personal jurisdiction over it violates the Fifth Amendment's Due Process Clause. Case law forecloses Libya's argument. *See Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 96, 99 (D.C. Cir. 2002) (holding "foreign states are not 'persons' protected by the Fifth Amendment" and, thus, "the Fifth Amendment poses no obstacle to the decision of the United States government to subject Libya to personal jurisdiction in federal courts").

### 3.    Causes of Action

In addition to the arguments addressed above, Libya also argues in its summary judgment motion that §1605(a)(7) and the Flatlow Amendment preempt state statutory and common law claims. Defs.' Opp'n to Pls.' Summ. J. Mot. 10-14. This argument is unpersuasive. "In the wake of the D.C. Circuit's opinion in *Cicippio-Puleo*, district courts in this jurisdiction have uniformly held that state law may be used to hold foreign states liable for acts of terrorism." *Pugh*, 2006 WL 2384915, at *14; *Collett*, 362 F. Supp. 2d at 238-40 (rejecting defendants' contention that Flatlow Amendment preempts state law causes of action against foreign states); *see also Cicippio-Puleo*, 353 F.3d at 1036 (remanding to "allow plaintiffs an opportunity to amend their complaint to state a cause of action under some other source of law, including state law"). And Libya provides this Court with no reason to hold otherwise.

## IV.    OTHER PENDING MOTIONS

### A.    Hartford's Motion to Strike Libya's Supplemental Memorandum

At the hearing held on September 15, 2006, Libya's counsel represented that Megrahi's conviction was not final and was in some type of appellate process.  Indulging Libya's request, the Court gave Libya one week to supplement its opposition to Hartford's summary judgment motion.  After timely submitting an unsigned, undated "affidavit," on October 23, 2006, Libya filed an "update" to its submission to "give notice to the Court of the recent publication of two articles from the Scottish publication 'Scotland on Sunday.'"  Defs.' Update 1.  Attached to Libya's three-sentence update are two articles taken from the internet site of "Scotland on Sunday," which apparently is a Scottish newspaper, that Libya claims "will be of assistance to the Court" in resolving Hartford's motion and "do not require any further elaboration."  *Id*. Hartford moves to strike the October 23 "update," contending the articles cannot be a legitimate basis for opposing summary judgment.  Hartford is correct.

To the extent Libya offers the unsupported newspaper articles for the truth of the matter asserted—i.e., Megrahi's conviction is under question—the Court finds they are inadmissible hearsay upon which Libya cannot rely for purposes of opposing summary judgment.  *See Hutira v. Islamic Republic of Iran*, 211 F. Supp. 2d 115, 123 (D.D.C. 2002) ("'[U]nsupported newspaper articles usually provide no evidence of the reporter's perception, memory or sincerity and, therefore, lack circumstantial guarantees of trustworthiness.'" (quoting *Eisenstadt v. Allen*, 113 F.3d 1240 (9th Cir. 1997) (Table) ("[N]ewspaper articles clearly fall within the definition of hearsay . . . and, thus, are inadmissible")).  Because there is no other apparent reason why Libya submitted the articles, the Court will grant Hartford's motion and strike the articles from the

24

record.

**B.      Hartford's Motion to Reestablish a Scheduling Order**

Hartford moves to reestablish a scheduling order, asserting that its "impression [is] that there is some reasonable likelihood that this matter may continue . . . and move towards trial." Mot. Sched. Order 1.  Due to the Court's resolution of, and findings regarding, the pending motions, the Court will deny Hartford's instant motion as moot.  If, however, discovery is necessary for either party to comply with this memorandum opinion and the accompanying order, that party shall move the Court for an order allowing discovery for the purpose of compliance. Additionally, following disposition of Hartford's partial summary judgment motion, the Court will order the parties to submit a proposed schedule for resolution of this matter in its entirety.

**C.      Libya's Motion for a Protective Order**

In line with its belief that this matter may move towards trial, Hartford served Libya with two limited discovery requests on March 27, 2007.  Pursuant to Rule 26(c)(1), Fed. R. Civ. P., Libya moves for a protective order that the discovery not be had.

Under Rule 26(c)(1), "for good cause shown" a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . [that] discovery not be had."  "[G]ood cause exists under Rule 26(c) when justice requires the protection of a party or a person from any annoyance, embarrassment, oppression, or undue burden or expense." *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998).  To justify such an order, the "moving party has a heavy burden of showing extraordinary circumstances based on specific facts." *Id*. (internal quotation marks and citation omitted).

Because Libya failed to establish circumstances that would justify a protective order, the Court will deny the motion.  Indeed, the only plausible circumstance Libya offers is that discovery in this matter closed on June 15, 2003.  Beyond that, Libya has not asserted that a protective order is necessary to shield it from "annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c).  Therefore, the Court finds that Libya failed to meet its heavy burden of showing that justice requires a protective order.

## CONCLUSION

Because the rescission of Libya's designation as a state sponsor of terrorism did not reinstate its sovereign immunity for acts that took place prior to rescission, and because Hartford states claims under state law sufficient to survive a motion to dismiss, the Court will deny Libya's motion to dismiss in part; however, because federal common law cannot furnish a cause of action under the FSIA, and because Hartford's claims for punitive damages are beyond the scope of this Court's jurisdiction, the Court will grant Libya's motion to dismiss in part.

Additionally, although Hartford established the absence of any genuine factual issue as to Libya's responsibility for the bombing of Pan Am Flight 103, because Hartford has yet to establish its entitlement to judgment as a matter of law, the Court will withhold ruling on Hartford's motion pending briefing on the proper choice of law and specific causes of action for each plaintiff.

Further, because this Court has subject matter jurisdiction, exercising personal jurisdiction over Libya does not violate due process, and federal law does not preempt Hartford's claims under state law, the Court will deny Libya's cross-motion for summary judgment.

Finally, the Court will grant Hartford's motion to strike Libya's submission of October

23, 2006, as it is inadmissible hearsay.  It will deny as moot Hartford's instant motion to

reestablish a scheduling order and will deny Libya's motion for a protective order for its failure

to carry its burden of showing that such an order is necessary in this matter.

     A separate order accompanies this memorandum opinion.


June 28, 2007                                          _____/s/_____

                                             Thomas F. Hogan

                                             Chief Judge